\_\_\_ FILED  \_\_\_ ENTERED
\_\_\_ LOGGED  \_\_\_ RECEIVED

MAR 27 2020

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### The Defendant and Related Individuals and Entities

1. From in or around April 2015 through in or around August 2016, the Defendant Nir Erez worked on behalf of an Israel-based business, Yukom Technologies ("Yukom"), which provided sales and marketing services, including "retention services," for two internet-based businesses with the brand names BinaryBook and BigOption (collectively "the Binary Options Organization").

2. In or around April 2015, the Defendant was hired to work as a sales representative on behalf of BinaryBook. Throughout the Defendant's tenure with the Binary Options Organization, Yakov Cohen and Yosef Herzog were principals of and had ownership interests in the Binary Options Organization.

3. BinaryBook and BigOption representatives sold and marketed financial instruments known as "binary options" to customers located throughout the world, including in the United States and within the District of Maryland.

4. The Defendant worked under the supervision of Cohen, Herzog, Lee Elbaz, Ori Maymon, Nissim Alfasi, Elad Bigelman, and others.

### Background on Binary Options and Related Definitions

5. A "binary option" was a type of option contract in which the payout depended on the outcome of a discrete event, typically related to whether the price of a particular asset — such as a stock or a commodity — would rise above or fall below a specified amount. Unlike standard options, investors in binary options were not being given the opportunity to actually purchase a stock or a commodity but, rather, were effectively predicting whether its price would be above or below a certain amount at a certain time of the day. The option holder was typically promised that when the binary option expired, the option holder will receive either a pre-determined amount of cash or nothing.

6. A "conversion" representative was a salesperson responsible for converting a prospective binary options customer into an investor and obtaining an initial deposit of funds.

7. A "retention" representative was responsible for working with the investor going forward with the goal of obtaining additional deposits. As part of this effort, the Defendant and other retention representatives were responsible for educating clients on how to use the BinaryBook and BigOption platforms.

8. A "bonus" was an amount of purported funds that representatives of BinaryBook and BigOption could contribute to an investor's account to be used in trading.

9. A "risk free trade" or "insured trade" was a trade offered by representatives to investors in which the investors' accounts would be reimbursed by "bonus" funds in the event of a losing trade.

### The Defendant's Participation in the Conspiracy and Fraudulent Scheme

10. The Defendant and other representatives of BinaryBook and BigOption, under the training and direction of Elbaz, Cohen, Herzog, Maymon, Alfasi, Bigelman, and others, agreed to induce BinaryBook and BigOption investors to deposit funds based on material misrepresentations, including:

   i. false statements and material omissions regarding the alignment of financial incentives between investors and representatives — *i.e.*, claiming to represent the interests of investors when, in fact, they were not representing the interests of investors;

   ii. false statements and material omissions regarding the suitability of binary options as investments and returns on investments in binary options;

   iii. false statements and material omissions about the names, qualifications, and physical location of representatives assisting investors;

   iv. false statements and material omissions regarding investors' ability to withdraw investment funds and about the reasons that funds could not be withdrawn; and

   v. false statements and material omissions regarding — and the deceptive use of — so-called "bonuses," "risk free trades," and "insured trades."

11. BinaryBook and Big Option representatives communicated with investors through the internet and communicated with clients by email and telephone. The calls with clients were recorded and used for training purposes.

12. BinaryBook and BigOption representatives were not representing the interests of investors. When investors lost money, the owners of BinaryBook and BigOption profited.

13. The Defendant's commissions were based on net deposits — that is, how much money his clients deposited minus any amounts clients were able to withdraw.

14. BinaryBook and BigOption representatives falsely referred to themselves as "analysts," "brokers," and "traders" to potential investors, when in fact they were sales representatives. The Defendant referred to himself as, among other things, an "expert trader" in communications with victim investors.

15. BinaryBook and BigOption representatives, including the Defendant, also falsely represented that they had experience and training in the financial markets. The Defendant did not have a background in finance, business, or the financial markets.

16. The Defendant had direct contact with investors and induced clients to invest in binary options by falsely representing the return on investment and using "bonuses" to convince clients to continue to deposit funds. The Defendant also attempted to prevent investors from withdrawing funds from their accounts.

17. The Defendant used an alias — referred to internally as a "stage name" — while working on behalf of BinaryBook. The Defendant used that stage name — "Jack Cohen" — to interact with client investors, and he also falsely presented his location and professional qualifications to client investors.

18. As an example, in or around August 2015, the Defendant falsely told an investor-victim that the Defendant's "profits" came "from your commission," by which the Defendant meant that the Defendant earned profits based on the investor-victim's successful trades, when in reality the Defendant was earning a percentage of the investor-victim's net deposits. The Defendant also falsely told the investor-victim that he was part of an investment team whose "success rate at the moment are talking [sic] between an interest rate of between 20-30%."

19. In furtherance of the conspiracy, the Defendant and his co-conspirators directly communicated with investors within the District of Maryland.

20. In furtherance of the conspiracy, the Defendant was responsible for approximately $528,625 in investor losses based on his direct interactions with investors as a sales representative.

SO STIPULATED:

_____
L. Rush Atkinson, Assistant Chief
Caitlin R. Cottingham, Assistant Chief
Jessee C. Alexander-Hoeppner, Trial Attorney

_____
Nir Erez
Defendant

_____
William B. Purpura, Esq.
Counsel for Defendant

11